# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|                                    |   |                                  |
|------------------------------------|---|----------------------------------|
| JAMES COVINGTON,                   | : |                                  |
|                                    | : | Civil Action No. 17-11397 (BRM)  |
| Plaintiff,                         | : |                                  |
|                                    | : |                                  |
| v.                                 | : | **OPINION**                      |
|                                    | : |                                  |
| BUCKS CTY. DEP'T OF CORR., et al., | : |                                  |
|                                    | : |                                  |
| Defendants.                        | : |                                  |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Summary Judgment filed by Defendant Charles Ellis ("Ellis"), Warden of Mercer County Correction Center (ECF No. 59); and a Motion for Summary Judgment filed by Defendants Bucks County Department of Corrections, Corrections Officer Andrew Amaroso, Corrections Officer Laws, Lieutenant Burkhart, Investigator Anthony Disandro, Lieutenant Robert Gorman, Bucks County Department of Corrections Chief Operating Officer Brian Hessenthaler, Bucks County Correctional Facility Warden Paul K. Lagana and Bucks County Department of Corrections Director Christopher Pirolli (collectively, "Bucks Defendants") (ECF No. 60). Plaintiff James Covington ("Plaintiff") filed Opposition to both Motions. (ECF Nos. 66, 68.) Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the claims against Defendant Ellis are **DISMISSED** and the Court will permit further briefing before addressing the Bucks Defendants' Motion.

**I. BACKGROUND**

Plaintiff was incarcerated at the Bucks County Correctional Facility in Bucks County, Pennsylvania ("BCCF") from September 7, 2017, until October 11, 2017. (Pl.'s Counter-Statement of Undisputed Material Facts ("SUMF") (ECF No. 68-2) ¶ 1.) On October 11, 2017, Plaintiff was transferred to Mercer County Correction Center ("MCCC") and then back to BCCF on October 27, 2017. (*Id.*) He was transferred to Montgomery County Correctional Facility on November 2, 2017. (*Id.*)

During an incident with a BCCF corrections officer on October 4, 2017, Plaintiff sustained a "very serious fracture" to his collarbone. (Compl. (ECF No. 1) ¶ 5.) He alleges the BCCF officers used unreasonable and excessive force against him. (*Id.* ¶ 6.) After the incident, he was transferred to Mercer County Corrections Center, who then sent him to an orthopedic specialist. (*Id.* ¶ 14.) Plaintiff alleges he was supposed to receive the surgery recommended by the specialist on November 1, 2017, but BCCF jail officials refused to comply. (*Id.* ¶ 16.)

On November 7, 2017, Plaintiff filed the Complaint seeking injunctive relief in the form of surgery, as well as damages. (ECF No. 1.) On November 13, 2017, he filed an emergency Motion for an Order to Show Cause to obtain the surgery. (ECF No. 4.) The Court denied the request on November 20, 2017, because Plaintiff had since been released from jail. (*Id.*) In December 2017, Defendants Ellis, Bucks County Department of Corrections, Brian Hessenthaler, Paul K. Lagana and Christopher Pirolli filed Motions to Dismiss on various grounds, including Plaintiff's failure to exhaust administrative remedies. (ECF Nos. 16, 21.) The Court denied the Motions without prejudice but permitted Defendants to re-file as summary judgment motions. (ECF No. 54.) These Motions from Defendants Ellis and the Bucks County Defendants followed. (ECF Nos. 59, 60.)

## II. LEGAL STANDARD

The Motion filed by Defendant Ellis is labeled as one for summary judgment and includes a statement of material facts as required. However, while his arguments regarding exhaustion rely on other documents, and are properly considered under Federal Rule of Civil Procedure 56, his substantive argument is based on the insufficiency of the factual allegations in the Complaint. As such, the Court will consider that portion of his Motion as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[1] *See Iudici v. Passaic Cty. Sheriff's Dep't*, No. 12-3466, 2018 WL 3000332, at *2 (D.N.J. June 15, 2018) (treating a motion labeled as a summary judgment as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)); *Meleika v. City of Jersey City*, No. 17-1959, 2018 WL 4522046, at *2 (D.N.J. Sept. 21, 2018) ("This motion, although styled as one for summary judgment, might fit within the confines of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"[A] motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed under Rule 12(b)(6), except that Rule 12(c) allows for the motion to be filed after the filing of an answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer." *Wellness Pub. V. Barefoot*, 2008 WL 108889, at *6 (D.N.J. Jan. 9, 2008); *see also Turbe v. Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion

---

[1] As discussed below, the Court finds the Complaint fails to state a claim against Defendant Ellis. Accordingly, the Court will not address the exhaustion portion of his Motion.

to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

## III. DECISION

### A. Defendant Ellis

The only potential claim in the Complaint which could apply to Ellis is the Second Cause of Action – Deliberate Indifference.[2]

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.[3] *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a

---

[2] Claim One was rendered moot when the Court denied Plaintiff's Emergency Order to Show Cause on November 20, 2017. (ECF No. 14.) Claim Three – Policymaker and/or Supervisory Liability, clearly refers only to Bucks Supervisory Defendants. (ECF No. 1 ¶ 16 ("At the time of the aforesaid incident, the individual Officer Defendants were acting under the direction and control of the Bucks County Department of Corrections"); ¶¶ 84, 85, 86, 88, 89, 92, 93, 94 and 95 (all referencing the overseeing of "Officer Defendants"; the only "Officer Defendants" named in the Complaint are BCCF employees). Claim Four – False Arrest and Excessive Force and Claim Five – Malicious Prosecution, relate solely to the incident involving the BCCF Officers.

[3] To the extent Plaintiff was a pre-trial detainee at the time of the incidents, he would be entitled to due process protections under the Fourteenth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Without deciding whether the Fourteenth Amendment provides greater protections, the Third Circuit has found it sufficient to apply the Eighth Amendment standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976) when evaluating a claim for inadequate medical care by a detainee. *Banda v. Adams*, No. 16-1582, 2017 WL 76943, at *2 (3d Cir. Jan. 9, 2017) (citing *Natale*, 318 F.3d at 581); *Edwards v. Northampton Cty.*, 663 F. App'x 132, 136 (3d Cir. 2016).

serious medical need; and (2) behavior on the part of prison officials constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue

6

> suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met. . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted).

Plaintiff's Complaint does not contain any specific factual allegations against Defendant Ellis. He generally discusses delays in providing medical treatment for his collarbone and a failure to provide the recommended surgery, but he alleges no facts about how Defendant Ellis himself was deliberately indifferent to his medical needs. *See Iqbal*, 556 U.S. at 676 (stating "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating a § 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (explaining "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior"). The only information given about Plaintiff's sixteen days at MCCC is, during that time period, he was sent out to see a specialist who scheduled a surgery.[4] (ECF No. 1 ¶¶ 11, 14, 43.) Based on the lack of facts provided, any direct claim against Defendant Ellis is dismissed without prejudice.

---

[4] Attached to the Complaint is a letter sent to Defendant Ellis on October 13, 2017 from Plaintiff's attorney requesting Plaintiff be given proper medical treatment for his injury. (ECF No. 1, Ex. B.) However, the letter does not change the fact that the Complaint still does not allege deliberate indifference on the part of Defendant Ellis. There are no allegations to suggest he was aware of Plaintiff's injuries before he received the letter and no allegations he failed to take action after he received the letter.

Any intended supervisory claim as a policymaker is also dismissed. Defendants may be sued as policymakers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

The Third Circuit in *Barkes v. First Correctional Medical, Inc.*, reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable under § 1983 for implementing deficient policies. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), reversed on other grounds by *Taylor v. Barkes*, ––– U.S. ––––, 135 S. Ct. 2042, 2043, 192 L.Ed.2d 78 (2015) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*, to find a supervisor acted with deliberate indifference as a policymaker,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.

Failure to train or supervise claims "are generally considered a subcategory of policy or practice liability." *See Barkes*, 766 F.3d at 316. A failure to train claim requires a plaintiff to "identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) (internal quotation marks and citations omitted).

Deliberate indifference in the supervisory context may be demonstrated by

> (i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's] (ii) by showing that the risk of constitutionally cognizable harm was "so great and so obvious that the risk and the failure of supervisory officials to respond will alone" support the finding that the two-part test is met.

*Beers—Capitol v. Whetzel*, 256 F.3d 120, 136—37 (3d Cir. 2001) (citing *Sample*, 885 F.2d at 1099).

Here, Plaintiffs have failed to allege sufficient facts to state a policymaking claim against Defendant Ellis. The Complaint contains nothing but a formulaic re-statement of the elements without any support. Plaintiff does not identify any particular policy, practice or procedure. He generally refers to "reasonable and necessary medical care to inmates" and "the actions of their employees and agents, including medical staff and other named Defendants," but with no specifics. (*See* ECF No.1 ¶¶ 65-80.) Moreover, he does not identify any individuals employed at MCCC whom Defendant Ellis was supervising or specify how the individuals violated his rights. In fact, his Complaint contains no allegations related to the actions of employees at MCCC at all.

Based on the lack of factual allegations and the conclusory nature of his claims, Plaintiff's claim against Defendant Ellis in his role as policymaker is dismissed without prejudice.

**B. Bucks Defendants' Motion**

With the dismissal of Defendant Ellis, the only remaining defendants are those from Bucks County (the Department of Corrections and the Jail). In addition, because the alleged excessive force, denial of medical treatment, false arrest and malicious prosecution also took place in Bucks County, it appears a transfer to the Eastern District of Pennsylvania would be in the interest of justice. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might

have been brought or to any district or division to which all parties have consented."). Before the Court transfers this matter, however, it will permit the parties to respond. The Court will administratively terminate the Bucks Defendants' Motion pending a decision on whether to transfer.

**IV. CONCLUSION**

For the reasons set forth above, Defendant Ellis's Motion, reviewed one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), is **GRANTED**. All claims against him are dismissed without prejudice. Within 30 days, parties may show cause why the Court should not transfer this matter to the Eastern District of Pennsylvania. The Bucks Defendants' Motion is **ADMINISTRATIVELY TERMINATED** until the Court renders a decision on transfer. An appropriate order follows.

Dated: March 29, 2019

> */s/ Brian R. Martinotti*
> **HON. BRIAN R. MARTINOTTI**
> **UNITED STATES DISTRICT JUDGE**